**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| WILLIS HOLLINS, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:26-cv-100 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| M&T BANK CORPORATION, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE AND GRANTING DEFENDANT'S ALTERNATIVE MOTION TO TRANSFER VENUE (DOC. NO. 4)**

---

Currently before the Court is Defendant's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (the "Motion"), filed by Defendant M&T Bank Corporation ("M&T Bank" or "Defendant"). (Doc. No. 4.) In his Complaint and Jury Demand ("Complaint"), Plaintiff Willis Hollins ("Hollins" or "Plaintiff") alleges that M&T Bank discriminated against him on the basis of race and disability. (Doc. No. 1 at PageID 1.) He also alleges that M&T Bank retaliated against him for requesting a workplace accommodation and for filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) Hollins brings his claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 1981, and Ohio Revised Code § 4112. (*Id.*)

M&T Bank moves for dismissal of the Complaint, arguing that Hollins should be equitably estopped from relying on his alleged Ohio residence to establish proper venue. (Doc. No. 4-1 at PageID 34–37.) In the alternative, M&T Bank moves to transfer this case to the United States District Court for the Western District of New York. (Doc. No. 4 at PageID 25.)

For the reasons stated herein, the Court **DENIES** Defendant's Motion insofar as it seeks dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(3), but **GRANTS** Defendant's alternative request and **TRANSFERS** this action to the Western District of New York pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

On May 3, 2021, M&T Bank hired Hollins, who is African American, as a Scrum Master, responsible for mentoring and coaching team members. (Doc. No. 1 at PageID 3; Doc. No. 4-3 at PageID 49.) Hollins worked for M&T Bank for about four and a half years, until M&T Bank terminated his employment on October 17, 2025. (Doc. No. 1 at PageID 5.) M&T Bank is headquartered in Buffalo, New York, but because M&T Bank's COVID-19 restrictions were still in effect in 2021, Hollins allegedly worked remotely from Tennessee and Ohio from the outset of his employment. (*Id.* at PageID 2–3.)

Throughout his employment at M&T Bank, Hollins reported to four different supervisors. Scrum Masters, like Hollins, report directly to a Release Train Engineer I ("RTE I"), who in turn reports to a Release Train Engineer II ("RTE II"). (Doc. No. 4-4 at PageID 55–56.) Hollins alleges that he reported to Chauntisse Foster for the first three years of his employment and received positive performance reviews. (Doc. No. 1 at PageID 3.) But James Lewer ("Lewer"), who was transitioning from an RTE I to an RTE II at the time, states that Hollins reported directly to him from August to November of 2023, about two years into Hollins's employment. (Doc. No. 4-4 at PageID 55–56.) In November of 2023, John Sellars ("Sellars"), an RTE I, became Hollins's direct supervisor and remained so until February of 2025. (Doc. No. 4-5 at PageID 57.) In early 2025, M&T Bank transferred Hollins to the mortgage department, where he began reporting to Brandon Ketteman ("Ketteman"). (Doc. No. 1 at PageID 5.) Both Sellars and Ketteman were RTE Is who

reported to Lewer. (Doc. No. 4-4 at PageID 56.) According to Lewer, he evaluated Hollins's performance in the latter half of 2025 as part of a reduction in force, and M&T Bank selected Hollins for termination based on that evaluation. (*Id.*)

Patricia Tanyi ("Tanyi"), a Business Systems Analyst at M&T Bank, attests that M&T Bank requires each employee to report a primary address so that M&T Bank can withhold the correct state payroll taxes. (Doc. No. 4-3 at PageID 49.) When M&T Bank hired Hollins, he reported a primary address in Dayton, Ohio. (*Id.*) According to Tanyi, however, M&T Bank's records show that Hollins listed Tennessee as his primary address for nearly all of his employment. (*Id.*)

In August of 2021, just three months after he was hired, Hollins changed his primary address to Nashville, Tennessee, and confirmed that he would work remotely from Tennessee rather than from M&T Bank's Buffalo office. (*Id.* at PageID 49–50.) M&T Bank then stopped withholding Ohio income tax from Hollins's pay. (*Id.* at PageID 49.) In February of 2024, after his supervisor asked him to update his address to New York, Hollins emailed Dhana Hannibal ("Hannibal"), an M&T Bank Human Resources employee, stating that he did not wish to change his address. (Doc. No. 4-2 at PageID 42.) Hannibal responded that internal systems listed Hollins as a remote employee working from Tennessee and reminded him that M&T Bank required him to represent all of his address information correctly so that it could withhold the appropriate taxes. (*Id.*) Hollins never again listed Ohio as his primary address. (Doc. No. 4-3 at PageID 49.)

Around February of 2024, M&T Bank started requiring employees under Sellars's supervision, including Hollins, to return to work in person at its Buffalo offices at least three days per week. (Doc. No. 4-5 at PageID 58.) Hollins alleges that, in early 2024, he suffered a fall that injured his hips and back and made prolonged sitting painful. (Doc. No. 1 at PageID 4.) Hollins

further alleges that Sellars approved his accommodation request to work remotely, and that he then returned to Ohio to work from there. (*Id.*) According to Sellars, however, Hollins told him around mid-2024 that he needed to work remotely from Tennessee because of an injury. (Doc. No. 4-5 at PageID 58.) From then until February of 2025, Sellars understood that Hollins was working from Tennessee. (*Id.*) Ketteman likewise stated that Hollins repeatedly represented that he lived in the Nashville area and that Ketteman received no indication that Hollins worked from Ohio. (Doc. No. 4-6 at PageID 61.) Lewer similarly recalled that M&T Bank's records listed Hollins as working remotely from Tennessee and had no recollection of Hollins saying he worked from Ohio. (Doc. No. 4-4 at PageID 56.) Hollins stated that he informed M&T Bank that he would be working remotely from Ohio, with his accommodation, and that he did so until his termination. (Doc. No. 6-1 at PageID 79.) His declaration did not identify which supervisors he told, when he told them, or how he communicated that information. (*Id.* at PageID 78–79.)

Hollins noted that his contact information listed both his Tennessee and Ohio addresses, and that his pay stubs and W-2s listed his Dayton, Ohio, address. (Doc. No. 4-3 at PageID 51; Doc. No. 6-1 at PageID 81–90.) The same record, however, designated the Nashville address as Hollins's primary address and the Dayton address as a mailing address. (Doc. No. 4-3 at PageID 51.) Hollins also stated that, in support of his accommodation request, he submitted medical documentation from his primary care provider. (Doc. No. 6-1 at PageID 78–79.) That documentation was a letter dated November 25, 2024, from a primary care office in Beavercreek, Ohio, stating that Hollins suffered from chronic hip and back pain and recommending that he be allowed to work from home. (*Id.* at PageID 92.) But the letter showed only that Hollins was in contact with an Ohio-based health care provider, not that he was living or working in Ohio. (Doc. No. 7 at PageID 97.)

In the summer of 2024, Hollins submitted a formal request to work remotely, and M&T Bank granted the accommodation for one year. (Doc. No. 1 at PageID 4.) In the late fall of 2024, around the time of the presidential election, Sellars allegedly expressed satisfaction with the election results and stated, in a meeting with several African American employees, that "you people will learn your place." (*Id.*) In early 2025, before Hollins moved to the mortgage department, Sellars allegedly told Hollins that M&T Bank no longer wanted him to work remotely and that he would need to request an extension of his accommodation to continue doing so. (*Id.* at PageID 5.) Hollins allegedly requested an extension in the late summer of 2025. (*Id.*) On August 12, 2025, Hollins filed a charge of discrimination with the EEOC and the New York State Division of Human Rights, alleging race discrimination and a hostile work environment. (Doc. No. 4-2 at PageID 43–44.) On September 17, 2025, M&T Bank placed Hollins on administrative leave, allegedly citing a restructuring of his department, and on October 17, 2025, it terminated him. (Doc. No. 1 at PageID 5.) On December 16, 2025, Hollins filed a second charge, this time with the EEOC and the Ohio Civil Rights Commission, alleging race and disability discrimination and retaliation. (*Id.* at PageID 2–3.)

M&T Bank made every employment decision concerning Hollins in Buffalo, New York. (Doc. No. 4-1 at PageID 30.) Hollins's supervisors gave him his work assignments from M&T Bank's Buffalo offices, and Lewer, who also worked from Buffalo, conducted the performance evaluation that led to Hollins's termination. (Doc. No. 4-4 at PageID 55–56; Doc. No. 4-5 at PageID 58.) M&T Bank processes and stores its payroll and employee records at its Buffalo offices. (Doc. No. 4-2 at PageID 39.)

On June 26, 2026, M&T Bank filed its current Motion. (Doc. No. 4.) Hollins filed his response in opposition to the Motion on July 16, 2026. (Doc. No. 6.) M&T Bank filed its reply

brief in support of its Motion on July 29, 2026. (Doc. No. 7.) Accordingly, M&T Bank's Motion is ripe for review.

## II. STANDARD OF REVIEW

### 1. Federal Rule of Civil Procedure 12(b)(3) — Improper Venue

On a motion to dismiss for improper venue, the plaintiff bears the burden of establishing that venue is proper by a preponderance of the evidence. *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 621 (6th Cir. 2025). In resolving venue questions, courts "may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014) (quoting *Audi AG & Volkswagen of Am. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)).

### 2. Title VII's Venue Provision

Title VII permits a plaintiff to bring an action in any of four places: (1) any judicial district in the state where the unlawful employment practice is alleged to have been committed; (2) the judicial district where the relevant employment records are maintained and administered; (3) the judicial district where the aggrieved person would have worked but for the unlawful practice; or, if the respondent cannot be found in any of those districts, (4) the judicial district of the respondent's principal office. 42 U.S.C. § 2000e-5(f)(3). The ADA incorporates Title VII's venue provisions, so the same standard governs the Plaintiff's disability claims in this case. 42 U.S.C. § 12117(a).

### 3. Transfer of Venue Under 28 U.S.C. § 1404(a)

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . .." 28 U.S.C. § 1404(a). If that threshold is met, the Court

weighs the private and public interest considerations, some of which may include: (1) the convenience to the parties and witnesses (the "convenience-of-parties-and-witnesses factor"); (2) the location of documents and other evidence; (3) the residences of the parties; (4) the locus of the operative facts; (5) the comparative ability of each forum to apply the governing law; and (6) the plaintiff's choice of forum. *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049–50 (S.D. Ohio 2002).

## III. ANALYSIS

The Motion places two issues before the Court. First is whether the Court should dismiss this action for improper venue. That issue has two parts: whether venue is proper in this District under the third prong of Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3), and whether M&T Bank's equitable estoppel defense bars Hollins from relying on his alleged Ohio residence to establish venue. The second issue is whether, even if venue is proper in this District, the Court should transfer this action to the Western District of New York under 28 U.S.C. § 1404(a). Before reaching that question, the Court must address Hollins's argument that M&T Bank waived its request for discretionary transfer.

### 1. The Motion to Dismiss for Improper Venue Is Denied.

#### a. Venue Is Proper in This District Under the Third Prong of Title VII's Venue Provision.

The Court will first consider whether Title VII's venue provision permits Hollins to sue in this District. Defendant argues that venue is improper in this District because M&T Bank made decisions concerning Hollins's employment in Buffalo, and the only connection between this lawsuit and Ohio is Hollins's newly alleged living arrangements. (Doc. No. 4-1 at PageID 32–34.) In response, Hollins argues that venue is proper under the third prong of 42 U.S.C. § 2000e-5(f)(3),

which M&T Bank's Motion never addressed, because he worked remotely from his home in Dayton, Ohio, until his termination and would have continued to do so but for that termination. (Doc. No. 6 at PageID 71–72.) In its Reply to Hollins's Memorandum in Opposition (the "Reply"), M&T Bank argues that Hollins's Complaint invokes only the first prong of Title VII's venue provision. (Doc. No. 7 at PageID 95.) M&T Bank also argues that Hollins's declaration cannot establish venue under the third prong. (*Id.* at PageID 96–97.) According to M&T Bank, none of the documents Hollins submitted, including pay stubs, W-2s, and a medical letter, show that he actually lived or worked in Ohio in 2024 and 2025. (*Id.*) M&T Bank further argues that Hollins's remote work accommodation from 2024 lasted only one year, so his claim that he would have continued working from Ohio but for his termination is speculative. (*Id.* at PageID 98–99.)

Hollins has met his burden of showing that venue is proper in this District under the third prong of Title VII's venue provision. The third prong asks where the aggrieved employee would have worked but for the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(f)(3). Hollins's declaration states directly that he was working from his home in Dayton, Ohio, at the time of his termination and that he would have continued to do so but for his termination. (Doc. No. 6-1 at PageID 79.) M&T Bank's evidence, including its tax withholding records and Hollins's Tennessee designation, may cast doubt on that, but it does not establish that Hollins was working somewhere else when M&T Bank terminated him. At most, it creates a factual dispute about where Hollins lived and worked, and at this stage the Court must resolve that dispute in Hollins's favor. *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014).

Hollins may rely on the third prong even though the venue paragraph of his Complaint cites only the first prong, which permits suit where the alleged unlawful employment practice was

committed. The Court looks to all of the Complaint's factual allegations, and those allegations describe Hollins's return to Ohio and his remote work from there. (Doc. No. 1 at PageID 4.)

Finally, the fact that M&T Bank granted Hollins's accommodation for only one year does not change this result. Hollins allegedly requested an extension of the accommodation in the late-summer of 2025, and shortly afterward, M&T Bank placed him on leave and terminated him. (*Id.* at PageID 5.) Because Hollins alleges that his termination was retaliation for requesting an accommodation, the Court cannot assume that, absent the termination, his remote work from Ohio would have ended. (*Id.* at PageID 1.) Accordingly, this District is a proper venue under the third prong of Title VII's venue provision.

**b. Defendant's Equitable Estoppel Defense Cannot Prevail.**

The next question is whether equitable estoppel bars Hollins from relying on his alleged Ohio residence to establish venue in this District. M&T Bank argues that all five elements of equitable estoppel are met because, beginning in August of 2021, Hollins continuously represented that he lived and worked in Tennessee, and M&T Bank relied on that representation by not withholding Ohio income tax from his pay. (Doc. No. 4-1 at PageID 34–37.) In response, Hollins argues that, at a minimum, his allegations and declaration create factual disputes on every element that M&T Bank must prove, and the Court must resolve those disputes in his favor at this stage. (Doc. No. 6 at PageID 70.)

M&T Bank has not met its burden of establishing every element of equitable estoppel. To establish equitable estoppel, M&T Bank must show that: (1) Hollins made a representation of material fact, through either his words or his conduct; (2) Hollins knew the true facts; (3) Hollins intended M&T Bank to act on the representation, or acted in a way that gave M&T Bank the right to believe he so intended; (4) M&T Bank did not know the true facts; and (5) M&T Bank

detrimentally and justifiably relied on the representation. *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 556 (6th Cir. 2009). The party asserting estoppel bears the burden on every element. *Id.* Even assuming that M&T Bank can establish the second element, given Hollins's own allegation that he returned to Ohio in early 2024 and worked remotely from there, the remaining elements either turn on disputed facts that the Court cannot resolve against Hollins at this stage or lack any support in the record. (Doc. No. 1 at PageID 4.)

As to the first element, the question is whether Hollins represented to M&T Bank that he lived and worked in Tennessee rather than Ohio, since that is the representation on which M&T Bank's estoppel defense rests. Here, the record conflicts. M&T Bank's evidence shows that Hollins changed his primary address to Tennessee in August of 2021. (Doc. No. 4-3 at PageID 49.) In February of 2024, Hollins told Hannibal that he did not wish to change that address, and he kept it after she reminded him to report his address accurately. (Doc. No. 4-2 at PageID 41–42.) Hollins, however, stated under oath that he never represented that he lived and worked only in Tennessee. (Doc. No. 6-1 at PageID 78.) He also stated that he told M&T Bank he would be working remotely from his home in Dayton, Ohio, under his accommodation. (*Id.* at PageID 79.) M&T Bank's own records support Hollins's account, because his human resources file listed his Dayton, Ohio, address alongside his Tennessee address, although only as a mailing address. (Doc. No. 4-3 at PageID 51.) Because Hollins states that he did not represent that he lived and worked in Tennessee rather than Ohio, and the Court must resolve this conflict in his favor at this stage, M&T Bank has not established the first element.

As to the third element, the question is whether Hollins intended for M&T Bank to rely on the Tennessee address he listed as his primary address or led M&T Bank to reasonably believe that he lived in Tennessee. Here, too, the record conflicts. M&T Bank's evidence shows that Hannibal,

a member of M&T Bank's Human Resources department, told Hollins in February of 2024 that he was required to report his address accurately so that M&T Bank could withhold the appropriate taxes, and that Hollins kept Tennessee as his primary address afterward. (Doc. No. 4-2 at PageID 41–42.) That evidence supports, at most, an inference that Hollins kept the Tennessee address so that M&T Bank would stop withholding Ohio income tax. Hollins, however, stated under oath that he never intended for M&T Bank to treat Tennessee as his only permanent address or to disregard his Ohio residence. (Doc. No. 6-1 at PageID 78.) And, as noted above, Hollins also listed his Dayton, Ohio, address in M&T Bank's human resources database, which weakens any inference that he meant for M&T Bank to treat him as living only in Tennessee. (Doc. No. 4-3 at PageID 51.) Whether Hollins's conduct reasonably led M&T Bank to believe he intended to be treated as working in Tennessee depends on the same disputed facts. Because Hollins denies that he intended for M&T Bank to treat Tennessee as his only residence, and the Court must resolve this conflict in his favor at this stage, M&T Bank has not established the third element.

As to the fourth element, the question is whether M&T Bank was aware of the true facts about where Hollins lived and worked. A party asserting estoppel cannot claim to have been misled if it had the means to learn the truth through reasonable diligence. *Trs. of Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 593 (6th Cir. 2000). M&T Bank's evidence shows that it relies on its employees to report their addresses accurately for tax purposes. (Doc. No. 4-2 at PageID 40.) Lewer, Sellars, and Ketteman each understood Hollins to be working from Tennessee. (Doc. No. 4-4 at PageID 56; Doc. No. 4-5 at PageID 58; Doc. No. 4-6 at PageID 61.) But M&T Bank had several pieces of information in its possession that pointed toward Ohio. Its records listed Hollins's Dayton address. (Doc. No. 4-3 at PageID 51.) The pay stubs and W-2s M&T Bank issued to Hollins listed that same Dayton address. (Doc. No. 6-1 at PageID 81–90.) The medical letter

supporting Hollins's request to work from home came from a primary care office in Beavercreek, Ohio. (*Id.* at PageID 92.) Because that information arguably gave M&T Bank the means to learn that Hollins was working from Ohio, and the Court must resolve this conflict in Hollins's favor at this stage, M&T Bank has not established the fourth element.

As to the fifth element, the question is whether M&T Bank detrimentally and justifiably relied on Hollins's listing of Tennessee as his primary address in M&T Bank's human resources database. The party asserting estoppel must suffer substantial detriment as a result of its reliance. *Trs. of Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir. 2000). M&T Bank's evidence shows that, after Hollins changed his primary address to Tennessee, M&T Bank stopped withholding Ohio income tax from his pay. (Doc. No. 4-3 at PageID 49.) The only detriment M&T Bank identifies from that change, however, is a potential future liability: penalties and interest under Ohio Rev. Code § 5747.06(D) that the State of Ohio could seek for M&T Bank's failure to withhold Ohio income tax. (Doc. No. 4-1 at PageID 36–37.) Nothing in the record shows that any taxing authority has assessed a tax, penalty, or interest against M&T Bank, or has even raised the issue. Moreover, M&T Bank could face that liability only if Hollins actually worked in Ohio, which is the very fact M&T Bank disputes. Because M&T Bank has identified only a speculative liability rather than a substantial, concrete detriment, M&T Bank has not established the fifth element.

Because M&T Bank bears the burden on every element of equitable estoppel, its failure to establish the first, third, fourth, and fifth elements is fatal to the defense at the motion to dismiss stage. *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 556 (6th Cir. 2009). Accordingly, equitable estoppel does not bar Hollins from relying on his alleged Ohio residence to establish

venue, and the Court **DENIES** M&T Bank's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(3).

**2. Transfer to the Western District of New York Is Warranted Under 28 U.S.C. § 1404(a).**

The final issue is whether, even though venue is proper in this District, the Court should transfer this action to the Western District of New York under 28 U.S.C. § 1404(a). M&T Bank argues that the Western District of New York is the more suitable forum because Defendant made all relevant decisions about Hollins's employment in Buffalo, and because Lewer, Sellars, and Ketteman, who "will undoubtedly be the most important witnesses in this case," work out of M&T Bank's Buffalo offices. (Doc. No. 4-1 at PageID 32.) M&T Bank also notes that it has no offices in Ohio and keeps its employment records in Buffalo. (*Id.* at PageID 33.) M&T Bank further points out that Hollins filed his initial charge of discrimination with the EEOC's Buffalo office and the New York State Division of Human Rights, rather than with the Ohio Civil Rights Commission. (*Id.* at PageID 33–34.) Hollins responds that M&T Bank's request to transfer the case depends entirely on its claim that venue is improper in this District, so transfer is unwarranted if venue here is proper. (Doc. No. 6 at PageID 74.)

As a threshold matter, the Court must decide whether this action "might have been brought" in the Western District of New York. 28 U.S.C. § 1404(a). That District is a proper venue under the first prong of Title VII's venue provision, which permits suit where the alleged unlawful employment practice was committed. 42 U.S.C. § 2000e-5(f)(3). M&T Bank's evidence shows that it made the relevant employment decisions, including Hollins's work assignments and his selection for termination, from its Buffalo offices. (Doc. No. 4-4 at PageID 56; Doc. No. 4-5 at

PageID 58.) Accordingly, this action might have been brought in the Western District of New York.

The Court will address Hollins's waiver argument before it reaches a conclusion about whether this action *should* be transferred to the Western District of New York. In a footnote, Hollins argues that although M&T Bank's Motion expressly cites § 1404(a) as one of the bases for its request, M&T Bank's supporting memorandum never mentions the statute or addresses what that statute requires: a showing that transfer would serve "the convenience of parties and witnesses" and "the interest of justice." (Doc. No. 6 at PageID 74.) According to Hollins, M&T Bank therefore waived any argument for discretionary transfer. (*Id.*) M&T Bank did not respond to this argument in its Reply. (Doc. No. 7.)

This argument has *some* force. M&T Bank's memorandum focuses primarily on the argument that venue is improper in this District, rather than on a separate showing that convenience favors New York even if venue here is proper. (Doc. No. 4-1 at PageID 31–37.) However, the facts most relevant to the convenience-of-parties-and-witnesses factor (the location of the witnesses, the records, and the operative decision making) are already before the Court through the same declarations M&T Bank submitted in support of its venue argument. (Doc. No. 4-2 at PageID 39; Doc. No. 4-4 at PageID 55–56.) Accordingly, the Court declines to treat M&T Bank's request for transfer as waived.

Hollins's choice of the Southern District of Ohio is entitled to *some* weight. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998) (recognizing that a plaintiff's choice of forum is entitled to weight but is not dispositive on a motion to transfer venue). Here, however, other factors outweigh that consideration and favor transfer to the Western District of New York.

The remaining private-interest factors favor transferring this case to the Western District of New York. M&T Bank identifies Lewer, Sellars, and Ketteman as the most important witnesses in this case. (Doc. No. 4-1 at PageID 32.) According to their declarations, all three supervised Hollins from M&T Bank's Buffalo offices. (Doc. No. 4-4 at PageID 55–56; Doc. No. 4-5 at PageID 57–58; Doc. No. 4-6 at PageID 60.) Lewer and Ketteman currently work in Buffalo, and Sellars, who remains employed by M&T Bank, worked there through 2025. (Doc. No. 4-4 at PageID 55; Doc. No. 4-5 at PageID 57; Doc. No. 4-6 at PageID 60.) The human resources personnel who administered Hollins's address records, Hannibal and Tanyi, also work in Buffalo. (Doc. No. 4-2 at PageID 40; Doc. No. 4-3 at PageID 48.) M&T Bank maintains its payroll and employee records at its Buffalo offices. (Doc. No. 4-2 at PageID 39.) Thus, almost all of the witnesses and evidence relevant to Hollins's claims are in the Western District of New York. Accordingly, private-interest factors substantially favor the Western District of New York, and the Court **TRANSFERS** this action to the Western District of New York pursuant to 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the reasons stated above, M&T Bank's Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Doc. No. 4) is **GRANTED** in part and **DENIED** in part. The Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(3) is **DENIED**. The alternative Motion to Transfer Venue is **GRANTED**. The Clerk is directed to **TRANSFER** this case to the United States District Court for the Western District of New York at Buffalo.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, November 16, 2026.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE